MARTIN V. B. SMITH et al., Respondents, v. CHARLES WISE et al., Impleaded, etc., Appellants.

In an action to set aside a general assignment as fraudulent and for an accounting, actual fraud as against creditors of the assignor, both on his part and that of the assignee, was proved and found. The interlocutory judgment adjudged the assignment void, appointed a receiver and required defendant to deliver to him all of the assigned property, and to pay over all the income, profits, etc., received therefrom "less any lawful disbursements made or incurred by said assignee." The assignor had been engaged in a manufacturing business. On the accounting the referee allowed the assignee the amount paid by him to the workmen in the factory, who were preferred, for work done prior to the assignment, and the additional value given to the stock by working it after the assignment, but refused to allow expenditures incurred by the assignee for appraising stock, payment for legal services, rent of factory, labor, etc. *Held*, no error; that the provision in the judgment did not extend the right to credits for disbursements beyond those which would be treated as lawful without its aid; and that as the disbursements so made were in furtherance of the fraudulent scheme, and by virtue of power dependent upon title or right of possession, they were unlawful.

The assignment preferred certain notes made by the assignor and indorsed by a firm, of which the assignee was a member; these notes were paid by the assignee before the commencement of the action. *Held*, that while the assignee was to be treated as never having had title, and, therefore, as against creditors, no rights dependent upon title were available to him, as the payment of the notes was made by direction of the assignor when he was at liberty to make it, and when the direction was operative, the assignee was entitled to be allowed the sum paid.

(Argued December 14, 1892; decided March 15, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the June term, 1889, which modified, and affirmed as modified, a final judgment in favor of plaintiffs and affirmed an interlocutory judgment entered upon an order of Special Term, confirming the report of a referee.

The action was brought to set aside the assignment of the defendant James White for the benefit of his creditors, to the defendant Charles Wise, as fraudulent against such creditors.

The assignor was engaged in the business of manufacturing shoes in the city of Brooklyn. He made the assignment April 22, 1886. The plaintiffs, then being creditors, afterwards in May, June and July following, recovered judgments against him, and on July fourteenth commenced this action.

The defendant White did not answer. The trial of the issues made by the answers of the other defendants resulted in a decision of the court that the assignment was fraudulent and void as against the creditors of White, followed by a judgment vacating the assignment, appointing a receiver to take possession of the property, and a referee to take and state the accounts of the defendants. The defendants Wise constituted the firm of L. & C. Wise, a creditor of White for considerable amount, and by the assignment given a preference preceded after that for wages of employes only by a debt represented by notes of White, indorsed by L. & C. Wise, held by the Irving National Bank. The trial court found that the assignment was made pursuant to arrangement between the parties to it, that the assignor and his wife should have and derive from it certain benefits and advantages in fraud of his creditors; and that shortly after the assignment was made, and to carry out such an arrangement, the assignee sold the stock and property in the shoe factory to the defendant Hirsch; that such sale was colorable only, and the defendants Wise furnished the money to make it; and that the business was carried on for their benefit in the name of Hirsch. By the judgment the sale to him was also set aside. And the referee, in stating the accounts of the defendants, charged them with

the property, and gave them credit for only the amount of $760.59, paid by the assignee to the workmen in the factory for services performed prior to the assignment. Exceptions taken to the disallowance to the assignee of certain items of credit claimed by him were heard at Special Term; and exception to the disallowance of the amount paid by the assignee to the Irving National Bank in satisfaction of the notes held by it and before mentioned was sustained, and the other exceptions save one were overruled. On appeal by both the plaintiffs and defendants to the General Term, the order of the Special Term, so far as it sustained such exceptions, was reversed and in other respects affirmed. The payments disallowed and for which the assignee claims he should have credit are:

1. The payment to appraisers for appraising the
   stock, machinery, etc., in factory, of . . . . . . .     $150 00
2. The payment to counsel for legal services ren-
   dered to the assignee. . . . . . . . . . . . . . . . . . . .   1,500 00
3. The payment for feed for horses, rent of fac-
   tory, labor, etc . . . . . . . . . . . . . . . . . . .  . . . . . . . .     451 25
4. The payment to Irving National Bank of debt
   preferred in the assignment. . . . . . . : . . . . . .   4,871 94

Further facts, to which reference may be deemed necessary, appear in the opinion.

*Otto Horwitz* for appellants. The findings of fraud as against both the assignor and the assignee, made by the trial justice, are unsupported by evidence. (*Halpin* v. *P. Ins. Co.,* 118 N. Y. 165; *Brayton* v. *Sherman,* 119 id. 623; *Durant* v. *Pierson,* 124 id. 444; *T. N. Bank* v. *Guenther,* 123 id. 568; *Mandeville* v. *Avery,* Id. 376; *Smith* v. *Perrine,* 121 id. 376; *Nordlinger* v. *Anderson,* 123 id. 544; *Crook* v. *Rindskopf,* 105 id. 476; *Thompson* v. *Fuller,* 28 N. Y. S. R. 4; *Kingston* v. *Koch,* 57 Hun, 12; *Cuyler* v. *McCartney,* 40 N. Y. 241; *Talcott* v. *Hess,* 31 Hun, 282; *Shultz*

v. *Hoagland*, 85 N. Y. 464; *Hardman* v. *Boehn*, 39 id. 200; *Livermore* v. *Northrop*, 44 id. 107; *Loos* v. *Wilkinson*, 110 id. 210; *Starin* v. *Kelly*, 88 id. 418; Penal Code, § 589; Perry on Trusts, 412–415, 422; *Halsted* v. *Gordon*, 34 Barb. 422; *Townsend* v. *Stearns*, 32 N. Y. 209–216; *Jessup* v. *Hulse*, 21 id. 168; *Levy's Acctg.*, 1 Abb. [N. C.] 177; *In re Rider*, 23 Hun, 91; *In re Hyman*, 13 N. Y. S. R. 136; *In re Wolff*, 13 Daly, 481; *In re Marklin*, Id. 105; *N. R. Bank* v. *Schuman*, 63 How. Pr. 476; *Boerum* v. *Schenck*, 41 N. Y. 182; *Fulton* v. *Whitney*, 66 id. 548; *Judson* v. *Abell*, 5 Wkly. Dig. 221.) There is no evidence in the case which will warrant any finding that the assignee was guilty of any meditated fraud in the assignment. (Burrill on Assign. § 371.) The lawful disbursements made or incurred by the assignee should have been allowed. (*Loos* v. *Wilkinson*, 113 N. Y. 485.) The assignee, before the commencement of this action and before the plaintiff had acquired any lien upon the moneys in his hands, paid to the Irving National Bank $4,871$\frac{94}{100}$, being the payment of promissory notes made by the assignor and held by the Irving National Bank, upon which notes the assignee's firm were indorsers, and which notes were preferred under the assignment. This payment should have been allowed to the assignee. (*Cramer* v. *Blood*, 57 Barb. 155; *Murphy* v. *Briggs*, 89 N. Y. 446; *Wakeman* v. *Grover*, 4 Paige, 23; *Ames* v. *Blunt*, 5 id. 13; *Knower* v. *C. N. Bank*, 124 N. Y. 552.)

*Alex. Blumenstiel* for respondents. Any device to cover up property for the benefit of the assignor, or to secure to him, directly or indirectly, any benefit is fraudulent. (*White* v. *Fagen*, 18 Wkly. Dig. 358; 3 R. S. [7th ed.] 2327, § 1; *McClurg* v. *Leckey*, 3 Penn. St. 83; *Currie* v. *Hart*, 2 Sand. Ch. 352; *Mackie* v. *Cairns*, 5 Cow. 547; Burrill on Assignments, 514; Bishop on Insolvency, 182, § 203.) An intentional omission from schedule of property belonging to the assignor is sufficient evidence of a fraudulent intent to vitiate

the assignment. (*Bagley* v. *Bowe*, 18 J. & S. 100; *Schultz*
v. *Hoagland*, 85 N. Y. 464; *Iselin* v. *Henlein*, 16 Abb. [N.
C.] 73.) The conduct of the assignee, if not a part of the
arrangement under which the assignment was made, would
not invalidate it, but where the evidence shows that such
acts are a part of a general plan of which the assignment
was the inception, these are evidences of fraud, for which the
assignment can be avoided. (*Cuyler* v. *McCartney*, 40 N. Y.
221, 239; *Pine* v. *Rickert*, 21 Barb. 469; *Shepard* v. *Hill*,
6 Lans. 387; *Forbes* v. *Waller*, 25 N. Y. 430.) Where a
transfer is set aside for actual fraud actively and knowingly
participated in by the grantee, the same is an absolute nullity
from its inception, and the fraudulent grantee must account
for the entire property received by him, and cannot be allowed
for any payment made or obligation incurred by virtue of the
fraudulent grant. (*Davis* v. *Leopold*, 87 N. Y. 620; *Burn-
ham* v. *Brennan*, 10 J. & S. 49; *Swift* v. *Hart*, 35 Hun, 128;
*Shaw* v. *Hanley*, 71 N. Y. 319; *Solomon* v. *Moral*, 53 How.
Pr. 342; Bump on Fraud. Conv. 573, 574; *Loos* v. *Wilkin-
son*, 110 N. Y. 195; *Riggs* v. *Murray*, 2 Johns. Ch. 565;
*Wood* v. *Hunt*, 38 Barb. 362; *Briggs* v. *Mitchell*, 60 id.
288; *Harris* v. *Sumner*, 2 Pick. 38; *McKie* v. *Gilchrist*, 3
Penn. 340; *Goodwin* v. *Hammond*, 13 Gal. 168; *Holland* v.
*Crofut*, 20 Pick. 321; *Barland* v. *Walker*, 7 Ala. 269; *Pet-
tibone* v. *Stevens*, 15 Conn. 26.) The judgment in this case
has established that the instrument which has been set aside
was never a general assignment. (*Billings* v. *Russell*, 101
N. Y. 226.) The defendants have, by their act, rendered the
proceeding necessary, and they, and not the creditors, should
pay the expense thereof. (*Bruce* v. *Kelly*, 7 J. & S. 27;
*Pond* v. *Comstock*, 20 Hun, 492–497; *Dewey* v. *Moyer*, 72
N. Y. 76; Wait on Fraud. Con. § 192; *McCloskey* v. *Stewart*,
63 How. Pr. 142; *P. Bank* v. *Morton*, 67 N. Y. 203.)

BRADLEY, J. The case presented by the facts as found by
the trial court was one of fraud in fact as against the creditors
of the assignor and chargeable to both parties to the assign-

ment; and such findings essential to the conclusion that the assignment was fraudulent and void as against such creditors were supported by the evidence.

And by it the inference was warranted, as the fact was found, that to consummate the plan and purpose, with which the assignment was made, to continue the business for the mutual benefit and advantage of the assignor and the defendants Wise, the sale of the stock, property and machinery of the factory was made by the assignee Wise to the defendant Hirsch, and that such sale was fictitious and made and intended as a cover to the business to be carried on with the property for the benefit of the other defendants pursuant to the design contemplated when the assignment was made, to the end that the assignor might realize a benefit to himself out of the assigned estate. The conclusion of the trial court was warranted by the evidence, and the interlocutory judgment entered on its decision was properly affirmed by the General Term.

Other questions arise on the appeal presenting for review the accounting represented by the referee's report. The evidence taken at the trial was not, nor was that taken before the referee, in the record upon that appeal to the General Term. The findings of the trial court as well as those of the referee were there. The facts represented by the record supported the view of the General Term that this case was one of actual, positive fraud as against the creditors of the assignor on the part of both him and the assignee. It followed that the assignment was, on its vacation, properly treated as void *ab initio*, and as a consequence it afforded no protection to the assignee to the prejudice of such creditors. (*Sands* v. *Codwise*, 4 Johns. 536; *Davis* v. *Leopold*, 87 N. Y. 620; *Swift* v. *Hart*, 35 Hun, 128.)

The referee allowed to him the amount paid the workmen in the factory for services performed prior to the assignment and the additional value given to the stock by working it after the assignment, so as to give the creditors the value only of it as of that time. The referee found that the various sums claimed to have been expended by the assignee, except that

so allowed, were paid out in pursuance and furtherance of the scheme to defraud the creditors of White. And we think that none of them other than that paid to the Irving National Bank require any special consideration. It is urged that the assignee's right to allowance of his disbursements is preserved by the provisions of the decree entered upon the decision of the Special Term to the effect that the defendants should hand over to the receiver all the property of the assigned estate " and likewise account and pay over all the income, profits and benefits thereof received by them or either of them, *less any lawful disbursements made or incurred by said assignee.*" That provision has not been construed to extend the right to credits for disbursements beyond those which would be treated as lawful without its aid. We see no error in the disallowance of the assignee's claim for disbursements as such.

Before this action was commenced, the assignee paid to the Irving National Bank the debt due to it and which was firstly after wages of employes, preferred in the assignment amounting to $4,871.94. There would have been no question about his right to credit for the amount so paid the bank if he had not been chargeable with actual fraud in the transaction of making the assignment, although it were set aside as fraudulent against the creditors of the assignor. ( *Wakeman* v. *Grover*, 4 Paige, 23 ; *Ames* v. *Blunt*, 5 id. 13 ; *Collumb* v. *Read*, 24 N. Y. 505.) If this were a tortious intermeddling by Wise with the property of White, it would be seen that he could have no protection whatever in the disposition of it or its proceeds ; and if such was the legal effect of the vacation of the assignment, the consequence would be the same. But that cannot be so. His possession was derived from the assignor and taken with his assent and was lawful. When the assignment was set aside for actual fraud of the parties to it, he was as to creditors treated as never having had title under the assignment, and, therefore, no rights dependent upon title were as against them available to him. The other disbursements referred to were made by virtue of power dependent upon title or the right to possession of the property which

rested in the transferring clauses of the assignment. The payment to the bank was by the direction of the assignor expressed in that instrument. It was made when the debtor was at liberty to make it, and when the direction as such to the assignee was operative. The amount when so paid passed beyond his control, and the bank being a *bona fide* creditor, could retain it as against the other creditors. (*Knower* v. *Bank*, 124 N. Y. 552.)

While it is said an assignee chargeable with participation in the fraud cannot effectually assert any equity in his behalf, he may have rights which courts will recognize, arising out of his relation to the property taken by virtue of a fraudulent assignment so far as they are consistent with those of the creditors of the assignee, and do not prejudice them. (*Loos* v. *Wilkinson*, 113 N. Y. 485.) The rights of the creditors may be preferential, may be made so by voluntary payment, or may result from the greater vigilance of some than other creditors. In the present case, the bank had the benefit of the direction by the debtor of a preferential payment to it, and the execution of the direction. The assignee should be allowed the amount so paid, unless the fact that his firm had indorsed the notes held by the bank, denied to him the right to such allowance for the reason that otherwise a benefit would result to him from the appropriation of so much of the assigned estate. There may be some apparent force in that view in its bearing upon the policy of the law to permit the adoption of no rule which may tend to encourage fraud. But no benefit to the assignee was directly derived from the payment, although it had the effect to relieve him from a contingent liability. Nor was it an appropriation of the assigned property to the benefit of the assignee in the sense which furnishes a reason for charging him in behalf of other creditors as for misappropriation of the amount of the fund so paid to the bank, a creditor of the assignor. He had and executed the direction of the debtor White to pay the bank debt out of the property of which his possession was then lawful. (*Murphy* v. *Briggs*, 89 N. Y. 446, 451.) The view of the General Term in accord

with that of the referee that the defendants should be charged with the expenses of the accounting, seems to dispose of that question. The construction of the provision of the interlocutory judgment to the effect that out of the proceeds and the property in the possession of the receiver, " after deducting the legal fees and expenses of the said receiver and of the said reference, the said receiver pay to the plaintiffs " the amounts of their judgments against Smith, is not necessarily that which is contended for by the defendants. While it apparently provides for taking the expenses of the reference out of the estate, its purpose may have been the protection of the receiver in paying them out of the fund and without any view to the relief of the defendants from such expenses. The case was not necessarily an improper one for charging them with the disbursements of the action ; and this is done by a subsequent provision of the same judgment. There is no occasion to interfere on this review with the conclusion of the court below on the subject of those expenses.

The final judgment should be modified by deducting from the amount with which the defendants are there charged, the sum of $4,871.94 paid by the assignee Charles Wise to the Irving National Bank, and interest from April 22, 1886 ; and in other respects the judgments should be affirmed.

All concur, FOLLETT, Ch. J., in result.

Judgment accordingly.